**Temporary injunction dissolved and Opinion filed October 19, 1995**



In The

# Court of Appeals

For The

# First District of Texas

NO. 01-95-00125-CV

## PURNELL, INCORPORATED, WILLIAM B. PURNELL, RELIANCE MACHINE WORKS, INC., AND DEVENDRA DESAI, INDIVIDUALLY AND DOING BUSINESS AS RELIANCE INDUSTRIES, Appellants

## V.

## THYSSEN INDUSTRIE AG HENSCHEL AND HENSCHEL MIXERS AMERICA, INC., Appellees

On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 94-37875

## OPINION ON MOTION FOR REHEARING

We grant appellants' motion for rehearing. We withdraw our opinion on motion for rehearing of June 6, 1995, and substitute this one in its stead.

In this accelerated appeal, appellants, Purnell, Inc., William Purnell, Reliance Machine Works, Inc., and Devendra Desai, individually and doing business as R.I.S. and Reliance Industries (collectively, the defendants), appeal the trial court's order granting the temporary injunction requested by appellees, Thyssen Industrie AG Henschel

(Thyssen) and Henschel Mixers America, Inc. (Henschel Mixers) (collectively, the plaintiffs). We affirm in part and reverse in part.

## Background

In 1973, William Purnell owned Purnell, Inc. (old Purnell), a company that marketed a variety of products for various manufacturers. The company specialized in products relating to the plastics industry. In 1976, William Purnell was approached by Thyssen, a German corporation. Thyssen manufactured a line of high-speed dry solids mixers under the name "Henschel" and was looking for a United States distributor for these products. Old Purnell became the United States representative for Thyssen.

In about 1985, William Purnell changed his company's name to Purnell International, Inc. William Purnell and John Giles were the primary shareholders of the company. In 1989, William Purnell promoted Giles to president of the company, and kept the title of CEO.

In the mid-1980's, William Purnell asked Thyssen to design a horizontal mixer. When Thyssen did not do so, old Purnell designed a horizontal mixer. In the late 1980's, old Purnell began producing and marketing its own mixer, in addition to marketing Thyssen's line of mixers.

Thyssen and old Purnell designed, engineered, and usually assembled their mixers, but did not machine the mixer parts. Instead, they contracted with a limited number of machine shops to perform this function. In 1987, Desai, through his companies Reliance Machine Works and Reliance Industries (collectively, Reliance), became one of the machinists who performed such work for Thyssen and old Purnell. Customarily, Thyssen and old Purnell would provide a drawing of the part to be built. Occasionally, if no drawing was available, they would provide Desai with a worn part and Desai would either repair the part or measure it and build a replacement. Over the years,

Desai made components and spare parts, and even assembled entire mixers. Most of the drawings given to Desai contained no proprietary stamp or label. A few of the drawings contained a proprietary stamp written in German; however, Desai did not understand German.

In 1991, William Purnell and Giles allowed Thyssen to purchase shares in old Purnell. The board of directors consisted of William Purnell, Giles, and a Thyssen representative. Before purchasing an interest in the company, Thyssen agreed to an employment contract with William Purnell. Not long after that, however, William Purnell, Giles, and Thyssen had a falling out and old Purnell underwent a "corporate divorce." By the terms of the settlement agreement: (1) William Purnell executed a noncompete agreement[1]; (2) old Purnell agreed not to use the name "Purnell," "Purnell International, Inc.," or any modification or permutation of the name, and agreed not to use the company's logo; and (3) William Purnell agreed not to use the name "Purnell International, Inc." and agreed not to use the company's logo. The agreement did not impose any restriction regarding trade secrets or confidential information.

William Purnell's affiliation with the company he founded ended in September 1993. However, in February 1993, while he was still CEO of old Purnell, William Purnell incorporated Purnell, Inc. (new Purnell, Inc.). Desai was listed as one of the directors of new Purnell, Inc. After the corporate divorce, old Purnell changed its name to Henschel Mixers America. Giles remained as president of Henschel Mixers.

In March 1993 (shortly before the corporate divorce), Giles asked Desai to sign a confidentiality agreement. Desai refused to sign because he feared it would affect his business with other customers, but, according to the plaintiffs, he assured Giles that he

---

[1] The noncompete agreement was for a period of six months, and expired in November 1993.

-3-

would not compete with the company as long as it continued to serve the market. Even after Desai refused to sign the confidentiality agreement, old Purnell and later Henschel Mixers continued to supply Desai with drawings, specifications, and parts for their mixers.

After the corporate divorce, William Purnell had an "informal relationship" with Desai to market mixers and mixer parts (including replacement parts for Henschel mixers) made by Reliance. The mixers bore the name "Purnell." In May 1994, new Purnell, Inc. exhibited a mixer at a trade show in Chicago. The mixer, an FM-600, was built by Desai. A promotional brochure distributed by new Purnell, Inc. provided in part:

> The name PURNELL has been associated with mixing technology for decades, and [is] known as an innovator of engineering advances for two generations. This new line of mixers introduces advances in construction, supported by an after-sale program heretofore not available in the industry.

The brochure featured a drawing of a high-speed mixer bearing the name "Purnell," and reflected that the company had a product line of 14 different mixers. At a trade show in Houston later that year, new Purnell, Inc. again displayed the FM-600, as well as three other mixers, some of which were only partially completed.

Thyssen and Henschel Mixers filed suit against William Purnell, new Purnell, Inc., Desai, and Reliance for misappropriation of trade secrets, unfair competition, conversion, unjust enrichment, breach of contract, promissory estoppel, tortious interference with business relationships, breach of fiduciary duty, and civil conspiracy; the plaintiffs also sought injunctive relief. The plaintiffs asserted that the defendants promoted, marketed and sold high-speed mixers that were made using trade secrets and confidential information belonging to Thyssen and Henschel Mixers. Further, they asserted the defendants used brochures that were confusingly similar to Henschel Mixer's brochure. Plaintiffs specifically asserted Desai used plaintiffs' technology and design drawings that he had obtained over the years in the course of a confidential

relationship with the plaintiffs to build high-speed mixers that were essentially identical to those made by the plaintiffs.

The trial court granted the plaintiffs' application for temporary injunction. The trial court found:

> 1. Defendants have and intend to continue to (a) manufacture, advertise, display or sell industrial dry solid chemical mixers and their specialized parts, that were created from the trade secrets of Plaintiffs, and (b) distribute advertising materials that are either copied from or are deceptively similar to the advertisements and brochures of Plaintiffs;
>
> 2. Plaintiffs will probably be awarded a recovery in this cause
> . . . .

The trial court also found that the plaintiffs would be injured if the defendants' conduct was not enjoined because customers were being diverted from the plaintiffs as a result of the defendants' actions. The trial court enjoined the defendant from:

> (a) Selling, manufacturing, delivering, displaying, promoting or advertising the sale of industrial dry solid chemical mixers or mixer parts which are the same [as] or deceptively similar to the mixers or mixer parts manufactured or sold by Plaintiffs or either of them;
>
> (b) Selling, manufacturing, delivering, displaying, promoting or advertising the sale of industrial dry solid chemical mixer parts which are interchangeable with mixer parts manufactured or sold by Plaintiffs or either of them (1) which are not clearly identifiable as not Plaintiffs and (2) which are manufactured from information learned or acquired from plaintiffs' information as set out in (c)[;]
>
> (c) Selling, manufacturing, delivering, displaying, promoting or advertising the sale of industrial dry solid chemical mixers or mixer parts that were created using information defendants learned or acquired from Plaintiffs' drawings, sketches, or other technology or know-how of Plaintiffs. . . .

(d)     Distributing, displaying or in anyway [sic] using advertising and promotional materials, and marketing or technical information, that is the same [as] or deceptively similar to Plaintiffs'.

## Standard of review

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993). To be entitled to a temporary injunction, the applicant must plead a cause of action and show a probable right of recovery and a probable injury in the interim. *University of Texas Medical Sch. v. Than*, 834 S.W.2d 425, 428 (Tex. App.--Houston [1st Dist.] 1992, no writ); *Texas Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 532 (Tex. App.--Houston [1st Dist.] 1992, no writ). Probable injury includes the elements of imminent harm, irreparable injury, and no adequate remedy at law. *Than*, 834 S.W.2d at 428. Damages are usually an adequate remedy at law, and the requirement of demonstrating an interim injury is not to be taken lightly. *Walling*, 863 S.W.2d at 57.

At the temporary injunction hearing, the only question before the trial court is whether the applicant was entitled to an order to preserve the status quo pending trial on the merits. *Than*, 834 S.W.2d at 428; *Phoenix Metallurgical Corp.*, 828 S.W.2d at 532. The status quo is defined as the last, actual, peaceable, noncontested status that preceded the controversy. *Than*, 834 S.W.2d at 428.

A trial court may not issue a temporary injunction except to prevent a threatened injury. *Phoenix Metallurgical Corp.*, 828 S.W.2d at 532. The commission of the act to be enjoined must be more than just speculative, and the injury that flows from the act must be more than just conjectural. *Id.*

This court's review is limited to whether the trial court clearly abused its discretion in granting the order. *Walling*, 863 S.W.2d at 58; *Than*, 834 S.W.2d at 428. We will not decide the merits of the underlying cause. *Than*, 834 S.W.2d at 428-29;

-6-

*Kincaid School, Inc. v. McCarthy*, 833 S.W.2d 226, 230 (Tex. App.--Houston [1st Dist.] 1992, no writ). We may not substitute our judgment for that of the trial court. *Than*, 834 S.W.2d at 429. We draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment. *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex. App.--Dallas 1993, no writ). We must determine whether the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Than*, 834 S.W.2d at 429. The trial court abuses its discretion when it misapplies the law or when it concludes the applicant has a probable right of recovery and that conclusion is not supported by the evidence. *Id.*

### Trade secrets: the mixers and mixer parts

In their first point of error, the defendants assert the trial court abused its discretion in granting the temporary injunction because the evidence did not show a probable right of recovery. Specifically, the defendants assert (1) no trade secrets or confidential information were shown to exist, (2) there was no confidential or fiduciary relationship between the defendants and plaintiffs, and (3) plaintiffs' common-law claims based on trade dress were unfounded.

The trial court found that the defendants were making and selling mixers and mixer parts "that were created from the trade secrets of Plaintiffs." The defendants argue that because the plaintiffs distributed mixers, parts, and drawings to "suppliers, fabricators, and customers," including Desai, without protecting the information from disclosure, that information cannot constitute trade secrets. We agree with the defendants.

> A trade secret may consist of
>
> any formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do

-7-

> not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers.

*Hyde Corp. v. Huffines*, 314 S.W.2d 763, 776 (Tex. 1958) (quoting 4 RESTATEMENT OF TORTS § 757 cmt. b (1939)); *Rugen*, 864 S.W.2d at 552; *Avera v. Clark Moulding*, 791 S.W.2d 144, 145 (Tex. App.--Dallas 1990, no writ); *American Precision Vibrator Co. v. National Air Vibrator Co.*, 764 S.W.2d 274, 276 (Tex. App.--Houston [1st Dist.] 1988, no writ). "It is self-evident that the subject matter of a trade secret must be secret." *Luccous v. J.C. Kinley Co.*, 376 S.W.2d 336, 338 (Tex. 1964). Before something can be termed a "trade secret," there must be a substantial element of secrecy. *American Precision Vibrator*, 764 S.W.2d at 276.

> The owner of a secret must do something to protect himself. *He will lose his secret by its disclosure unless it is done in some manner by which he creates a duty and places it on the other party not to further disclose or use it in violation of that duty.*

*Furr's, Inc. v. United Speciality Advertising Co.*, 385 S.W.2d 456, 459 (Tex. App.--El Paso 1964, writ ref'd n.r.e.) (emphasis added). Further,

> it stands to reason that the confidence reposed in the other person must, in some way, be manifest -- if not by words, then by the acts of the parties or the whole picture of their relationship. Confidential relationship is a two-way street: if the disclosure is made in confidence, the "disclosee" should be aware that the secret is being revealed to him on the condition he is under a duty to so keep it.

*Id.* at 459-60.

Here, the plaintiffs provided Desai with hundreds of drawings and designs of their mixers and mixer parts over a six-year period. Similar drawings and designs were distributed to other machine shops as well. Few of the hundreds of drawings provided to Desai contained any kind of proprietary stamp or label. Most of the few drawings containing proprietary information contained information written in German, a language

-8-

Desai does not understand. Before March 1993, the plaintiffs never suggested to Desai that they considered this information confidential. The plaintiffs do not know for certain what or how many drawings they gave to Desai over the years, and are not certain if Desai returned all the drawings to them. On occasion, the plaintiffs gave Desai a part and asked him to repair or reproduce it and to provide drawings for the part; no one ever suggested to Desai that the drawings he created for the plaintiffs were confidential. There is evidence that, on at least one occasion, the plaintiffs gave Desai a computer diskette that contained design details, but that contained no information identifying the diskette as belonging to or coming from the plaintiffs.

In March 1993, Giles asked Desai to sign a confidentiality agreement; Desai refused to sign. Even after Desai refused to sign the agreement, however, the plaintiffs continued to send him designs and drawings. Thus, there was never an express agreement between the plaintiffs and Desai to keep the information secret. The plaintiffs assert that although he refused to sign the confidentiality agreement, Desai orally agreed not to compete with them, but the existence of this oral agreement does not change the fact that the plaintiffs continued to give unlabeled drawings to Desai even though he specifically refused to sign a confidentiality agreement.

We conclude that, based on the record developed at the temporary injunction hearing, the plaintiffs did not establish a probable right to recovery. This record reflects that, even if their designs and drawings were, at one time, trade secrets, the plaintiffs did nothing to protect these secrets. Nothing in the relationship between Desai and the plaintiffs suggests that the plaintiffs did anything before March 1993 to impose a duty on Desai to keep their information secret, and they continued to provide him with drawings and designs even after he refused to sign a confidentiality agreement. Because of the manner in which the plaintiffs disseminated the information at issue to

Desai, that information cannot be considered "substantially secret." In the absence of a substantial element of secrecy, there can be no trade secret. *See American Precision Vibrator*, 764 S.W.2d at 276. The plaintiffs had no trade secrets for the trial court to protect; the trial court therefore abused its discretion in entering the order of temporary injunction.

The plaintiffs also assert that William Purnell's knowledge of the industry and of Henschel Mixer's customers' specific mixing problems, gained from his years of experience working for old Purnell, constitutes a trade secret obtained in the course of a confidential relationship. We disagree. In the corporate divorce, the parties bargained for a six-month period in which Purnell would not compete with the plaintiffs. The parties could have but did not make any agreement regarding any trade secrets or other information they considered confidential.

A former employee may use the general knowledge, skills, and experience acquired during his employment to compete with a former employer and even do business with the former employer's customers, provided that competition is fairly and evenly conducted. *Auto Wax Co. v. Byrd*, 599 S.W.2d 110, 112 (Tex. App.--Dallas 1980, no writ). Nothing in this record suggests that the "confidential information" about which the plaintiffs complain is anything other than general knowledge William Purnell acquired during tenure with old Purnell. He may use this knowledge of the mixing industry to compete against Henschel Mixers. In fact, we do not understand how he could compete in the dry solids mixer business *without* relying on the know-how he acquired in his many years with old Purnell.

We sustain point of error one.

### Immediate and Irreparable harm: the brochures

In point of error two, the defendants assert that the trial court abused its

discretion in granting the temporary injunction because the evidence did not show that immediate and irreparable harm would occur without immediate temporary injunctive relief. The trial court found that the defendants were distributing "advertising materials that are either copied from or are deceptively similar to the advertisements and brochures of Plaintiffs" and enjoined them from "distributing, displaying or in anyway [sic] using advertising or marketing or technical information, that is the same [as] or deceptively similar to Plaintiffs'." The plaintiffs assert that the defendants' advertising brochure contained a "duplication of a picture of a Henschel mixer," and a reproduction of a data table from the Henschel brochure "with identical model designations and a reprint of a conversion error which appeared in the [Henschel] brochure." The defendants assert that their brochure differed significantly from the Henschel brochure. We agree.

First, the cover of the Henschel brochure contains a frontal-view *photograph* of a mixer; the Purnell brochure contains a profile *drawing* of a mixer. Second, the format of the two brochures is different. Third, although the data tables in both brochures contain a similar conversion error, the other figures in the data tables are not uniformly identical. Fourth, based on the parties' exhibits, it appears that both brochures follow a general format utilized by other manufacturers of similar machines. In short, the Purnell brochure is not the same as or deceptively similar to the Henschel brochure. We sustain that portion of point of error two that relates to the issue of advertising materials.

In light of our disposition of these points of error, we need not address the remaining points. We reverse the trial court's judgment and order the temporary injunction dissolved.

/S/ Michol O'Connor
MICHOL O'CONNOR
Justice

Chief Justice Oliver-Parrott and Justice Taft also sitting.

Do not publish. TEX. R. APP. P. 90.

Judgment rendered and opinion delivered OCT 1 9 1995
True Copy Attest:

Margie Thompson/
Clerk of Court

-12-